UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIRHOESSEIN N. E.,[1]<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, Warden, et al.,<br>Respondents. | No. 1:26-cv-03144-KES-FJS (HC)<br>A-Number: 249-391-605<br>FINDINGS AND RECOMMENDATION THAT THE PETITION FOR WRIT OF HABEAS BE GRANTED IN PART<br>(ECF No. 1)<br>[14-DAY OBJECTION DEADLINE] |

Petitioner Amirhoessein N. E. ("Petitioner") is an immigrant detainee, proceeding with counsel, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Petitioner argues that his prolonged detention without a bond hearing violation violates due process. (ECF Nos. 1, 12.) Petitioner requests that this court order his immediate release or in the alternative require that he be promptly provided with a bond hearing. (*See generally* ECF No. 1.)

I. BACKGROUND

Petitioner is an asylum seeker and citizen of Iran. (ECF No. 8, Ex. 1 ¶¶ 5, 6.) On September 7, 2024, Petitioner entered the United States and was immediately detained by immigration officials and placed into expedited removal proceedings. (*Id.* at ¶ 6.)

On September 25, 2024, an asylum officer found that Petitioner had a credible fear of returning to Iran and issued a Form I-862, Notice to Appear, which charged Petitioner with removability pursuant to sections 212(a)(6)(i) and 212(a)(7)(A)(i)(I) of the Immigration and

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information.

Nationality Act ("INA"). (ECF No. 8, Ex. 2 at 1.) On June 4, 2026, Petitioner was provided "a full merit hearing on his asylum application and at the conclusion of the hearing, the [immigration judge] denied all his applications for relief and ordered him removed to Iran." (ECF No. 8 at 2:15; *see also* ECF No. 8, Ex. 19.) Respondents aver that the delay in adjudicating Petitioner's asylum application was largely due to Petitioner's eleven requests for continuances; but Respondents acknowledge that the immigration court reset the case a few times. (*See generally* ECF No. 8, Ex. 1.)

As of June 30, 2026, Petitioner lodged an appeal with the Board of Immigration Appeals ("Board") challenging the immigration judge's denial of his applications for "asylum, withholding of removal, and protection under the Convention against torture." (ECF Nos. 12 at 2, 12-1 at 5.)

Since Petitioner's first encounter with immigration authorities on September 7, 2024, Petitioner has never been granted parole, an order of release on recognizance in the United States, or a detention hearing. (ECF No 8, Ex. 1 ¶ 9.)

II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 8 U.S.C. § 2241(c)(3). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the initial burden of demonstrating that "[h]e is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

III. DISCUSSION

Petitioner claims that his prolonged detention absent a bond hearing violates due process.[2] (ECF No. 1 at 6.) Relying on 8 U.S.C § 1225(b)(1)(B)(i), Respondents argue that Petitioner was denied bond "because the [immigration judge] correctly found that Petitioner is subject to mandatory detention as an alien place [sic] in removal proceedings after a finding of credible fear by an asylum officer." (ECF No. 8 at 1.) Since the initial briefing, an immigration judge has denied Petitioner's claim for asylum and Petitioner's appeal remains pending with the BIA.

The court agrees that Petitioner is subject to mandatory detention under 8 U.S.C § 1225. But this does not mean that Petitioner has no constitutional right to a bond hearing. *See Zinaida v. Lyons,* No. CV-26-02866-PHX-RM (MTM), 2026 WL 1584699, at *1 (D. Ariz. June 3, 2026) (finding that a noncitizen in almost identical circumstances was entitled to a bond hearing). Where a noncitizen's detention under section 1225(b) has become unreasonably prolonged, courts in this circuit have generally found that the proper remedy is an individualized bond hearing before a neutral immigration judge. *Id.*; *see also Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022) ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate

---

[2] Petitioner also raises other grounds in his petition. (*See* ECF No. 1 at 6-7.) Specifically, Petitioner claims (1) that he has been subjected to excessive force and punitive treatment in detention, and (2) that his continued detention is causing him serious medical harm. (*Id.*) As the Ninth Circuit Court of Appeals explained in *Pinson v. Carvajal*, "the Supreme Court has left open the key question of whether there are circumstances when a challenge to the conditions of confinement is properly brought in a petition for writ of habeas corpus." 69 F.4th 1059, 1075 (9th Cir. 2023) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 144-45 (2017) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement")).

Nonetheless, the undersigned declines to consider whether Petitioner raises a distinct claim for release based on the conditions of confinement. These claims are more properly considered in a civil suit. *See Jemal v. Warden, Cal. City Det. Facility*, No. 2:26-CV-1187-TLN-JDP, 2026 WL 1584710, at *2 n.2 (E.D. Cal. June 3, 2026) (declining to consider release based on conditions of confinement because petitioner had not demonstrated extreme conditions or medical neglect), *report and recommendation adopted sub nom. Jemal v. Warden of Cal. City Det. Facility,* No. 2:26-CV-1187-TLN-JDP, 2026 WL 1715310 (E.D. Cal. June 12, 2026).

remedy is a bond hearing before an immigration judge rather than immediate release.”).

In evaluating Petitioner’s due process claim, the court evaluates “whether there exists a liberty or property interest of which a person has been deprived, and if so… whether the procedures followed by [the government] were constitutionally sufficient.” *Swarthout v. Coke*, 562 U.S. 216, 219, 131 (2011). “Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process] Clause protects.” *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

In *Department of Homeland Security v. Thuraissigiam*, the United States Supreme Court held that applicants for admission have “only those rights regarding admission that Congress has provided by statute.” 591 U.S. 103, 140 (2020). Nonetheless, a petitioner who is detained under 8 U.S.C. § 1225(b), is not precluded from challenging the constitutionality of their detention so long as petitioner does not purport to invoke any rights regarding admission. *See Zinaida,* 2026 WL 1584699, at *1 (discussing *Thuraissigiam,* 591 at 107, 110). Courts in this circuit have further explained that *Jennings v. Rodriguez,* 583 U.S. 281 (2018), does not foreclose habeas relief in cases analogous to Petitioner’s. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1105-06 (W.D. Wash. June 12, 2019) (discussing *Jennings*). In fact, the Supreme Court’s analysis of section 1225(b) was limited to the statutory language itself and whether the constitutional avoidance doctrine invoked under 8 U.S.C. § 1231 in *Zadvydas* applies to 8 U.S.C. § 1225(b). *Jennings*, 138 S. Ct. at 844-46. *Jennings* declined to consider the constitutionality of prolonged mandatory detention under the statute. *Id.* at 851.

Based on the foregoing, the undersigned concludes that Petitioner possess a liberty interest in freedom from detention. The court now proceeds to a discussion of what process is due in Petitioner’s case.

The assigned district judge in this matter has previously applied the *Lopez*[3] test for petitioners held for an allegedly prolonged period pursuant to 8 U.S.C. § 1225(b). *See Lin v. Warden of Cal. City Corr. Ctr.,* No. 1:26-CV-02632-KES-EPG, 2026 WL 1423656 (E.D. Cal.

[3] *Lopez v. Garland*, 631 F. Supp. 3d 870 (E.D. Cal. 2022)

May 20, 2026) (applying the 3-factor *Lopez* test).[4] Under the *Lopez* factors, the court considers (1) the total length of detention to date, (2) the likely duration of future detention, and (3) the delays in the removal proceedings caused by the petitioner and the government. *Lopez*, 631 F. Supp. 3d at 879.

A. Total Length of Detention

The length of detention "is the most important factor." *Lopez*, 631 F. Supp. 3d at 882 (quoting *Banda*, 385 F. Supp. 3d at 1118). When detention continues beyond a year, "courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (quotation marks and citation omitted)

Petitioner has been detained for over twenty-four months. This duration supports finding that his continued detention without a bond hearing violates due process. *See Harun Mohammed v. Warden of the Cal. City Det. Ctr.,* 2026 WL 192368, at *2–4 (E.D. Cal. Jan. 26, 2026) (ordering a bond hearing for a petitioner who had been detained for a period of seventeen months).

B. Likely Duration of Future Detention

The court must also consider "how long the detention is likely to last." *Lopez*, 631 F. Supp. 3d at 881 (citation omitted). When "removal proceedings are unlikely to end soon . . . [this] suggests that continued detention without a bond hearing is unreasonable." *Id.* (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

In anticipation of Petitioner's appeal of the immigration judge's order of removal, Respondents argue that Petitioner's continued detention would serve a lawful immigration purpose. (ECF No. 8 at 4 ("[A] as of today, Petitioner's asylum application has been fully adjudicated by an [immigration judge]. Thus, the record reflects that Petitioner's detention has served its lawful purpose and will continue to serve that purpose if he decides to appeal the

---

[4] In similar circumstances courts in this circuit have also applied the 3-factor *Mathews* test and 6-part *Banda* test. *See Zinaida,* 2026 WL 1584699, at *2 (collecting cases).

[immigration judge]'s adverse decision.").)

The court recognizes that the government maintains a legitimate interest in enforcing immigration law. Yet the court is also mindful of the fact that Petitioner's removal proceedings are unlikely to end soon. Petitioner appealed the immigration judge's denial of his asylum application, inter alia, on June 30, 2026. (ECF No. 12, Ex. 1 at 5.) Consequently, Petitioner's continued detention may take up to two years or longer. *Banda*, 385 F. Supp. 3d at 1119. Therefore, the undersigned finds that this factor weighs in favor of Petitioner.

C. Delays in Removal Proceedings

In evaluating any delays, the "operative question should be whether the alien has been the cause of delayed immigration proceedings and, where the fault is attributable to some entity other than the alien, the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable." *Lin,* 2026 WL 1423656, at *3 (citation omitted).

Petitioner appears to have made eleven requests for continuances since his detention and prior to any order of removal being entered. (ECF No. 8 at 2.) Respondents further highlight that the Department of Homeland Security "did not ask for a single continuance" but acknowledge that the immigration court reset the case in a few instances. (*Id.* at 4.) Moreover, Petitioner has now appealed the immigration judge's order of removal and there is no allegation that the appeal was made in bad faith. *See Doe v. Andrews,* 2025 WL 2590392, at *11-12 (E.D. Cal. Sept. 8, 2025) (an appeal to the Board is "an appropriate remedial avenue" for petitioner seeking asylum).

Even though Petitioner has caused delay in furtherance of his own goal to seek relief from removal, this does not nullify his claim that detention has become unreasonably prolonged. *Id.* at *11 ("[p]etitioner is entitled to raise legitimate defenses to removal, and such challenges do not undermine" a claim for prolonged detention.) The court further notes that an asylum officer initially found Petitioner to be credible. (ECF No. 8, Ex. 1 at ¶ 8.) "The fact that Petitioner chose to pursue an asylum application and requested continuances to further that application does not deprive him of a constitutional right to due process, absent some indicia of bad faith or dilatory tactics, which are absent here." *Andrews,* 2025 WL 2590392, at *11 (citations omitted). *But see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) (holding that a detainee's choice

to contest the denial of immigration relief to the Board weighed against the detainee's due process challenge to a prolonged 8 U.S.C. § 1226(a) detention evaluated under *Matthews v. Eldridge*, 424 U.S. 319 (1976)). In sum, the undersigned finds that this factor tips slightly against the Petitioner and tips slightly in favor of Respondents.

For the reasons outlined above, the undersigned finds that *Lopez* factors, on balance, weigh in favor of granting Petitioner a bond hearing.

D. Remedy

The undersigned finds the appropriate remedy is a prompt and individualized bond hearing before a neutral decisionmaker. *See Lopez*, 631 F. Supp. 3d at 882; *Banda*, 385 F. Supp. 3d at 1120–21. While the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger, the governmental interest at stake is not the detention itself, but rather "the government's ability to detain [petitioner] *without a bond hearing*." *Lopez*, 631 F. Supp. 3d at 882 (emphasis in original, citation omitted). At the hearing, the government must establish by clear and convincing evidence that petitioner is a flight risk or a danger to the community to justify denial of release on bond. *Lopez*, 631 F. Supp. 3d at 882; *Banda*, 385 F. Supp. 3d at 1107; *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *9 (E.D. Cal. July 25, 2025).

IV. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, the undersigned HEREBY FINDS AND RECOMMENDS that Petitioner's request for a writ of habeas be GRANTED IN PART.

The undersigned further recommends that Respondents be directed to provide Petitioner with a bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder,* 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id*. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions

of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

These findings and recommendation are submitted to the United States district court judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy of these findings and recommendations a party may file written objections with the court and serve a copy on all parties. *Id*. The document should be captioned, “Objections to Magistrate Judge’s Findings and Recommendation” and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The court will not consider exhibits attached to the objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. The district judge may disregard any pages filed in excess of the fifteen (15) page limitation. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **September 25, 2026**

UNITED STATES MAGISTRATE JUDGE